UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VINCENT J. TARULLO            :
                             :
            v.               :      NO. 3:02CV644(EBB)
                             :
UNITED STATES DEPARTMENT      :
OF DEFENSE                    :


RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

_____Plaintiff Vincent J. Tarullo commenced this action against defendant United States Department of Defense ["DOD"] in which Complaint plaintiff seeks declaratory, injunctive and equitable relief against defendant for improperly withholding agency records in violation of the Freedom of Information Act, 5 U.S.C § 522, as amended ["FOIA"], and the Privacy Act, 5 U.S.C § 552a, as amended ["Privacy Act"]. (Doc. No. 1).

On June 21, 2005 defendant filed the pending Motion for Summary Judgment, brief and Local Rule 56(a)1 Statement in support. (Docs. Nos. 25-27).[1]  Plaintiff filed his brief in opposition, affidavit and Local Rule 56(a)2 Statement on June 17, 2005. (Docs. Nos. 28-30).[2]

---

[1]Attached to Doc. No. 27 are the following two exhibits: Declaration of C. Steven Hernandez, sworn to May 25, 2005 ["Hernandez Decl."](Exh. A); and a copy of the Respondent's Third Amended List Of Privileged Documents, dated August 2, 2004 ["Third Amended List of Priv. Docs."](Exh. B)(emphasis omitted).

[2]Attached to the affidavit of plaintiff, sworn to June 14, 2005 ["Plaintiff Aff't"](Doc. No. 30) are the following five exhibits: copy of cover letter re: Consent to Cooperate with Security Process, dated February 4, 2002 and copy of Consent to Cooperate with Security Process and receipt signature page (Exh. A); copy of correspondence, dated February 7, 2002 and another copy of Consent to Cooperate with Security Process and receipt signature page (Exh. B); copy of correspondence, dated February 13, 2002 with copy of completed receipt of signature page attached; (Exh. C); copy of correspondence, dated March 25, 2002 and copy of Special Investigative Inquiry, printed December, 5, 2001

For the reasons stated below, defendant's Motion for Summary Judgment (Doc. No. 25) is **granted in part and denied in part**.

I. FACTUAL BACKGROUND

In his Local Rule 56(a)2 Statement(Doc. No. 29)["Plaintiff's Statement"], plaintiff disputes each of the seven paragraphs of material facts asserted by defendant in his Local Rule 56(a)1 Statement (Doc. No. 26)["Defendant's Statement"]. The factual summary, therefore, is taken from the Complaint (Doc. No. 1) and the parties' briefs and accompanying affidavits, depositions, and exhibits cited in both parties' Local Rule Statements and, accordingly, does not constitute factual findings of this Court.

Plaintiff is a Technical Specialist for the Defense Contract Audit Agency ["DCAA"] of the DOD, assigned to the Greater Connecticut Branch Office in Stratford, Connecticut.  (Plaintiff Aff't, ¶¶ 1-2; Doc. No. 1, ¶ 7; Doc. No. 4, ¶ 7).  On or about September 22, 2001, plaintiff sent a letter, through counsel, requesting "a copy of any record containing information about [plaintiff] maintained at [DCAA]." (Hernandez Decl., ¶ 2; Doc. No. 1; Doc. No. 1, ¶ 11; Doc. No. 28, at 1-2).  Plaintiff also requested "[s]uch information to include, but not be limited to records related to alleged AWOL charges in his Official Personnel Folder (OPF), Employee Performance Folder (EPF), Supervisory

_____

(Exh. D); excerpts of a copy of plaintiff's affidavit, sworn to May 7, 2003. (Exh. E).

Personnel Records Folder (371.2 file) and/or Employee Medical
File (EMF).  This request includes any records in electronic form
such as e-mails." (Id.).  In a letter dated October 29, 2001,
defendant acknowledged receipt of the September 22, 2001 request
and released sixty-nine pages responsive to plaintiff's request.
(Doc. No. 1, ¶ 12; Doc. No. 27, at 2; Doc. No. 28, at 2).

    In January 2002, plaintiff's attorney appealed the October
29, 2001 response on grounds that "all records containing
information about [p]laintiff were not released." (Doc. No. 1,¶
13; Doc. No. 27, at 2; Doc. No. 28, at 2).[3]  On March 1, 2002,
the DOD denied plaintiff's appeal. (Doc. No. 1, ¶ 14; Doc. No.
27, at 2; Doc. No. 28, at 2). Subsequently, on April 10, 2002,
plaintiff initiated this action seeking "declaratory, injunctive,
and equitable relief for violation of the FOIA and Privacy Act."
(Doc. No. 1; Doc. No.  27, at 2; Doc. No. 28, at 2).

II. STANDARD OF REVIEW

    The standard for summary judgment is well established.  The
moving party is entitled to summary judgment if it demonstrates
that there is no genuine issue of material fact and that it is
entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).
Upon motion, following adequate time for discovery, Rule 56(c)
requires that summary judgment be entered against a party

---

[3]Plaintiff erroneously stated January 28, 2001. (Doc. No. 1, ¶ 13; Doc. No.
28, at 2).

who fails to make a showing sufficient to establish the
existence of an element essential to that party's case,
and on which that party will bear the burden of proof
at trial.  In such a situation, there can be "no
genuine issue as to any material fact," since a
complete failure of proof concerning an essential
element of the nonmoving party's case necessarily
renders all other facts immaterial.  The moving party
is "entitled to judgment as a matter of law" because
the nonmoving party has failed to make a sufficient
showing on an essential element of her case with
respect to which she has the burden of proof.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

This showing may be made by "pleadings, depositions, answers

to interrogatories, and admissions on file, together with

affidavits, if any."  FED. R. CIV. P. 56(c).  Rule 56(e)

specifically provides that a party opposing summary judgment,

however, "may not rest upon mere allegations or denials of his

pleading, but must set forth specific facts showing that there is

a genuine issue for trial."  FED. R. CIV. P. 56(e).  <u>See also</u>

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1985).  A

"dispute about a material fact is 'genuine' . . . if the evidence

is such that a reasonable jury could return a verdict for the

nonmoving party."  <u>Anderson</u>, 277 U.S. at 248 (citation omitted).

"Credibility determinations, the weighing of the evidence,

and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge. . . .  The evidence of the

nonmovant is to be believed, and all justifiable inferences are

to be drawn in his favor."  <u>Id</u>. at 255 (citation omitted).  "On

summary judgment the inferences to be drawn from the underlying

facts contained in the [moving party's] materials must be viewed
in the light most favorable to the party opposing the motion."
Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970) (quoting
United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). "If
reasonable minds could differ as to the import of the evidence,
. . . the moving party simply cannot obtain summary judgment."
R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997)
(citations and internal quotation marks omitted). Thus, the
party moving for summary judgment must "carry its burden of
showing the absence of any genuine issue of fact." Adickes, 398
U.S. at 153 (1970).

　　　"As to materiality, the substantive law will identify which
facts are material. Only disputes over facts that might affect
the outcome of the suit under the governing law will properly
preclude the entry of summary judgment. Factual disputes that
are irrelevant or unnecessary will not be counted." Anderson,
477 U.S. at 248 (citation omitted). "[I]t is the substantive
law's identification of which facts are critical and which facts
are irrelevant that governs." Id.

## III. DISCUSSION

### A. STANDARD OF REVIEW IN FOIA CASES

　　　The Freedom of Information Act "seeks to permit access to
official information long shielded unnecessarily from public view
and attempts to create a judicially enforceable public right to

secure such information from possibly unwilling official hands." Environmental Prot. Agency v. Mink, 410 U.S. 73, 79 (1973). The Act "seeks to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 136 (1975) (citations and internal quotations omitted).[4] "[V]irtually every document generated by an agency is available to the public in one form or another, unless it falls within one of the Act's nine exemptions." Id.[5]

In order to prevail on a motion for summary judgment in a FOIA case, "the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." Carney v. United States Dep't of Justice, 19 F.3d 807, 812 (2d Cir.)(multiple citations omitted), cert. denied, 513 U.S. 823 (1994). "Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the

---

[4]Specifically, 5 U.S.C. § 552(a)(3) reads:

> Except with respect to the records made available under paragraphs (1) and (2) of this subsection, each agency, upon request for records which (A) reasonably describes such records and (B) is made in accordance with the published rules stating the time, place, fees (if any), and procedures to be followed, shall make records promptly available to any person.

[5]Of the nine exemptions listed in 5 U.S.C. § 552(b), the relevant exempt category is 5 U.S.C. § 552(b)(5) ["Exemption 5"] which exempts "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."

agency's burden." Id. (multiple citations omitted). These affidavits, which are afforded a presumption of good faith, must demonstrate that the agency "conducted a reasonable search for relevant documents." Garcia v. United States Dep't of Justice, 181 F. Supp. 2d 356, 366 (S.D.N.Y. 2002)(citation omitted). The affidavits must show that the agency used "methods reasonably calculated to produce documents responsive to the FOIA request." Id. The "presumption of good faith cannot be rebutted by purely speculative claims about the existence and discoverabililty of other documents." Id. (multiple citations omitted). Rather, plaintiff must "present some evidence of bad faith on the part of the Government - or non-speculative evidence regarding the existence of the documents - in order to defeat the Government's motion for summary judgment as to the search." Id. at 367 (multiple citations omitted).

If an agency demonstrates that it has in fact conducted a reasonable search, it has thereby satisfied its obligations under FOIA and is entitled to summary judgment on this issue. Id. at 366 (citation omitted). However, if an agency fails to sustain its burden, a district court has jurisdiction to order the production of improperly withheld documents.[6]   United States Dep't of Justice

---

[6]Section 552(a)(4)(B) provides:

> On complaint, the district court . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.  In such a case the court shall determine the matter

v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755
(1989).  The district court "shall determine the matter de novo,
and may examine the contents of such agency records in camera to
determine whether such records or any part thereof shall be
withheld under any of the exemptions. . . ." 5 U.S.C. §
552(a)(4)(B).

### 1. ADEQUACY OF SEARCH

Defendant contends that its "actions were taken in good faith
from the time that the confusing correspondence was received, up to
and including its claim of privilege, and continue until the
present;"[7] thus, summary judgment in favor of defendant is
warranted. (Doc. No. 27 at 7).  Plaintiff counters that defendant
did not conduct a reasonable search in good faith; the Hernandez
Declaration is insufficient; and defendant has not satisfied its
burden of proof to withhold the fifty-three[8] documents. (Doc. No.
28 at 5-8).  Defendant concedes that the initial response to
plaintiff may have been inadequate, due to a "confusing duplicative

---

de novo, and may examine the contents of such agency records in
camera to determine whether such records or any part thereof shall
be withheld under the exemptions set forth in subsection (b) of
this section, and the burden is on the agency to sustain its
action.
(emphasis added).

[7]Defendant contends that the September 22, 2001 letter from plaintiff's
counsel followed, by nine days, a similarly worded September 13, 2001 letter
from plaintiff in which letter plaintiff appeared to seek the "same
production" as that later sought by his counsel.  (Doc. No. 27 at 1-2).

[8]There are no document numbers 17 and 25.

chronology of demands."[9]  However, since that time the DOD has taken steps to ensure that production is adequate. (Doc. No. 27 at 5).

In support of its motion, the DOD proffers the declaration of C. Steven Hernandez ["Hernandez Declaration"], the Deputy Regional Director for the Northeastern Region of the DCAA,[10] in which declaration Hernandez avers that after the plaintiff filed this action with the District Court, "[i]n an effort to settle this matter[,] the Resources Manager [Robert Dietrich] conducted a further document review" in April and May of 2002 wherein he searched for copies of any records maintained at DCAA containing information about plaintiff. (Hernandez Decl. at ¶ 6).[11] Moreover, according to Hernandez, Dietrich made a request from DFAS Indianapolis, which is the central repository for Official Personnel Folders, Employee Performance Folders and Medical Folders on all DCAA personnel, to "provide him with a complete and true copy of all folders maintained by them on" plaintiff.  (Hernandez Decl. at ¶ 7a). Additionally, Hernandez avers that Dietrich asked the Regional Human Resources Division to review its files, which

---

[9]See note 7 supra.

[10] "As Deputy Regional Director, [Hernandez] oversee[s] the activities of the Resource Manager who is responsible for, among other things, the Region's personnel, labor relations, and information management programs and operations in eight states in the Region including Connecticut and New York." (Hernandez Decl. at ¶ 1).

[11]The declaration is from Hernandez and not from Dietrich since Dietrich retired on July 3, 2004 (Doc. No. 27, at 2).

review produced one document that has been produced to plaintiff;
Dietrich requested documents from the Regional EEO Manager, which
documents have been identified as "privileged;" Dietrich requested
documents from plaintiff's managers and supervisors in his Field
Audit Office and from the Regional Audit Manager, which documents
have been produced; Dietrich requested information from the
Regional Director, which e-mails have been produced;[12] and Dietrich
requested a review of documents from the Regional Labor Relations
Officer since plaintiff is a Union Officer, and such correspondence
has either been produced or has been identified as "privileged."[13]
(Hernandez Decl. at ¶¶ 7b-7f).

The Hernandez Declaration must be "reasonably detailed" and
must set forth the "search terms and type of search performed."
Oglesby v. United States Dep't of the Army, 920 F.2d 57, 68 (D.D.C.
1990). Moreover, in order to "afford a FOIA requester an
opportunity to challenge the adequacy of the search and to allow
the district court to determine if the search was adequate in order
to grant summary judgment," Hernandez must aver "that all files
likely to contain responsive materials (if such records exist) were

---

[12]Hernandez acknowledges that this search revealed a "number of e[-]mails that
had escaped notice earlier when the Region interpreted the request as only
pertinent to 'derogatory' information." (Hernandez Decl. at ¶ 7d).

[13]Again Hernandez avers that some of the correspondence recovered was
"initially determined to be unrelated to the contents of Attorney Rizzitelli's
September 22, 2001 FOIA request," but that "[t]hese documents have since been
identified and either produced" or claimed as "privileged" on the privilege
log. (Hernandez Decl. at ¶ 7f).

searched." (Id.).

The Hernandez Declaration outlines the requests made, to whom and the outcome of such requests. Moreover, Hernandez avers that Dietrich searched for copies of plaintiff's records by "stud[ying] the examples" provided by plaintiff, namely: "records related to alleged AWOL charges in his Official Personnel Folder (OPF), Employee Performance Folder (EPF), Supervisory Personnel Records Folder (371.2 file) and[/]or Employee Medical File (EMF)." (Hernandez Decl. at ¶ 6; see also Hernandez Decl. at ¶¶ 7a-7f). Additionally, the Hernandez Declaration outlines DCAA's systems for maintaining and searching its files and includes that Dietrich searched all folders maintained by the central repository for files on DCAA personnel. (Hernandez Decl. at ¶ 7a). DOD has shown that it made a good faith effort to conduct a search for the requested records, using reasonable methods to produce the information. Oglesby, 920 F.2d at 68 (citations omitted). The Hernandez Declaration fulfills the requirement that "a declaration concerning the adequacy of the government's search . . . demonstrate that the agency used methods 'reasonably calculated' to produce documents responsive to plaintiff's FOIA request." Garcia, 181 F. Supp. 2d at 367. Furthermore, because there is no evidence that the DOD acted in bad faith, besides plaintiff's purely speculative claims, plaintiff has failed to rebut the adequacy of the search. See id.

Notwithstanding the foregoing, plaintiff contends that the Hernandez Declaration is "devoid of any foundation or personal knowledge" and therefore does not satisfy Federal Rule of Civil Procedure 56(e). (Doc. No. 28 at 6).[14]  Robert Dietrich conducted the FOIA search in response to plaintiff's request.  However, because Dietrich retired on July 3, 2004 (see Doc. 27 at 2), Hernandez, as the Deputy Regional Director for the Northeastern Region, who oversaw and was responsible for the activities of Dietrich, prepared the declaration for this Court's review. (Hernandez Decl. at ¶ 1).  Such affidavit suffices as "[a]n affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who actually participated in the search." Carney, 19 F.3d at 814. Accordingly, Hernandez, as the Deputy Regional Director, has the requisite personal knowledge so as to satisfy Federal Rule of Civil Procedure 56(e).

### 2. EXEMPTION 5

Defendant contends that it has properly withheld the fifty-three[15] documents under FOIA Exemption 5 as such documents are

---

[14] Rule 56(e) of the Federal Rules of Civil Procedure, provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

[15] See note 8 supra.

subject to the deliberative process privilege, the investigative privilege and/or the attorney client privilege.[16] (Doc. No. 27 at 7-9; <u>see</u> Respondent's Third Amended List of Priv. Docs.). Plaintiff counters that the defendant has not satisfied its burden of proof that the withheld documents fall within an exemption to FOIA and, according to plaintiff, the Hernandez Declaration does not "satisfy the <u>Vaughn</u> Index" as it does not provide "in sufficient detail specific facts that correlate the claimed exemption to the withheld document." (Doc. No. 28 at 7-8) (citation omitted).

Exemption 5 protects from public disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with that agency." <u>See</u> 5 U.S.C § 552(b)(5). "[T]he most natural meaning of the phrase 'intra-agency memorandum' is a memorandum that is addressed both to and from employees of a single agency." <u>Department of the Interior v. Klamath Water Users Protective Ass'n.</u>, 532 U.S. 1, 9 (2001) (internal quotations and citation omitted). In order for a document to qualify under Exemption 5, a Government agency must be the source and the document "must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that

---

[16] Defendant contends that it sent a copy of its amended privilege log to plaintiff and that plaintiff has failed to compel production of the listed documents. (Doc. No. 27 at 9). Defendant thereby asserts that plaintiff's failure to contest the claims of privilege constitutes a waiver of such claim. (<u>Id.</u>).

holds it." Id.

Exemption 5 incorporates civil discovery privileges, including the attorney work-product privilege and the deliberative process privilege. See Klamath, 532 U.S. at 8.  The deliberative process privilege "covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Id. This privilege, however, does not apply to "purely factual" material. Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999)(citations and internal quotations omitted). In addition to the deliberative process privilege, Exemption 5 includes "the documents which would come within the attorney-client privilege if applied to private parties." Sears, Roebuck & Co., 421 U.S. at 154.

Rather than contest the application of the asserted privileges, plaintiff contends that the privilege log is deficient as there exists no accompanying declaration "that would satisfy the Vaughn index requirements" which require that an affiant "provide in sufficient detail specific facts that correlate the claimed exemption to the withheld document[s]." (Doc. No. 28 at 8)(citation omitted).

An agency can meet its burden in FOIA litigation by submitting documentation that includes "a relatively detailed analysis [of the withheld material] in manageable segments without resort to conclusory and generalized allegations of exemptions" and the

14

documentation must "provide an indexing system [that] would subdivide the [withheld] document under consideration into manageable parts cross-referenced to the relevant portion of the Government's justification." Halpern v. Federal Bureau of Investigation, 181 F.3d 279, 290 (2d Cir. 1999)(citing Vaughn v. Rosen, 484 F.2d 820, 826-27 (D.C. Cir. 1973) (alterations in original)). Specifically, the government agency may satisfy the Vaughn standard by "submitting affidavits to the court that describe with reasonable specificity the nature of the documents at issue and the justification for nondisclosure; the description provided in the affidavits must show that the information logically falls within the claimed exemption." Halpern, 181 F.3d at 291 (citations and internal quotations omitted). The index is "viewed as necessary to protect the adversary process in a FOIA case, in which the only party opposing disclosure will have access to all the facts." Church of Scientology Int'l v. United States Dep't of Justice, 30 F.3d 224, 228 (1st Cir. 1994). "An adequate Vaughn index serves three functions:" (1) "it forces the government to analyze carefully any material withheld;" (2) "it enables the trial court to fulfill its duty of ruling on the applicability of the exemption;" and (3) "it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court." Maynard v. Central Intelligence Agency, 986 F.2d 547, 556-57 (1st Cir.

1993)(multiple citations and internal quotations omitted). The Second Circuit has rejected a "rigid adherence to any particular indexing format" under the <u>Vaughn</u> standard, "opting instead for a functional approach." <u>Halpern</u>, 181 F.3d at 291 (multiple citations omitted).

On August 2, 2004, defendant provided its Third Amended List of Privileged Documents to plaintiff in which defendant listed the type of document, the subject matter, the date and author, the claimed privilege, and the known recipients for each of the fifty-three[17] withheld documents. (<u>See</u> Third Amended List of Priv. Docs.). After a careful review of the Hernandez affidavit and defendant's Third Amended List of Privileged Documents, this Court concludes that the majority of entries and the accompanying declaration contain "only general or conclusory assertions concerning the documents," thus precluding an informed judgment on whether the documents are properly covered by the privilege.[18] <u>See</u> <u>Church of</u>

---

[17]<u>See</u> note 8 <u>supra</u>.

[18] In <u>Church of Scientology Int'l</u>, Senior Circuit Judge Coffin concluded that government's index and affidavit contained only general and conclusory assertions concerning the documents. 30 F.3d at 230-31. The court observed that the index included, for example, the following information:

| [Pages] | [Description] | [Content/withheld portions] | [Exemptions] |
|---|---|---|---|
| 21 | Typed AUSA (undated) | Attorney work product document marshalling facts and sources of information created in contemplation of litigation. Confidentiality referenced throughout document. References Third party individuals throughout.(WIF [withheld in ful]). | b(5) b(7)(D) b(7)(C) |

<u>Id.</u> at 230.  Such index is substantially more thorough than the privilege list

<u>Scientology Int'l</u>, 30 F.3d at 231.  Therefore, defendant's Third Amended List of Privilege Documents and the Hernandez affidavit fail to satisfy the "reasonable specificity" standard necessary to fulfill the functional purposes addressed in <u>Vaughn</u>.  <u>See Halpern</u>, 181 F.3d at 293.

### B. PRIVACY ACT

According to defendant, the Privacy Act does not afford a means to disclose the documents withheld from production as Section 552a(d)(5) of the Privacy Act exempts from disclosure "information compiled in reasonable anticipation of a civil action or proceeding."  (Doc. No. 27 at 9-10)(citations omitted).  In response, plaintiff contends that his claim falls under the Privacy Act as the agency has refused to comply with his request for disclosure of information "pertaining to him."  (Doc. No. 28 at 4).

The Privacy Act, 5 U.S.C. § 552a, governs the maintenance and disclosure of records maintained on individuals, such that an individual may request and gain access to his record or to any information pertaining to him governed by a governmental agency. An individual may bring a civil action against the agency for failure to comply with the terms of the Privacy Act, and the district court

---

before this Court. In this case, in most of the index, the government has listed one-to-two-word descriptions of the subject matter of the withheld documents, it does not list the claimed exemption, and the accompanying declaration fails in its entirety to support the government's claim for exemption.

shall have jurisdiction. See 5 U.S.C. §§ 552a(g)(1)(A)-(D). The access provisions of the Privacy Act, however, do not apply to "information compiled in reasonable anticipation of a civil action or proceeding."[19]  5 U.S.C. § 552a(d)(5); see Varville v. Rubin, 1998 WL 681438, at *3 (D. Conn. 1998). "Courts applying exemption (d)(5) of the Privacy Act have interpreted the exemption in accordance with its plain language and have not read the requirements of the attorney work product doctrine into Exemption (d)(5)." Varville, 1998 WL 681438, at *3 (citations omitted). Moreover, "the fact that the documents at issue were not prepared by or at the direction of an attorney is not determinative" in deciding whether such documents fall within Exemption (d)(5). Id. at *4 (citations omitted).

Unlike defendant's failure to satisfy its burden of demonstrating that its affidavit and privilege log satisfy the Vaughn standard, as discussed in Section II.A.2. supra, defendant has met its burden of establishing that the documents withheld were prepared in anticipation of litigation. The fifty-three[20] documents withheld are properly identified as privileged, which log does not

---

[19]Access to records under the Privacy Act and FOIA is "available without regard to exemptions under the other." Varville v. Rubin, 1998 WL 681438, at *3 (D. Conn. 1998)(citations omitted).

[20]See note 8 supra.

require the details outlined in a <u>Vaughn</u> index.[21] Moreover, the
Court agrees with defendant's correct observation that "[t]he
contemplation that litigation would be forthcoming was not
illusory" as "[p]laintiff is currently litigating the instant
case," along with <u>Tarullo v. Dep't of Defense</u> Civ. No. 3:04 CV 1682
(RNC). The Privacy Act, therefore, does not provide a basis for
plaintiff to compel defendant to release the information that
plaintiff seeks in the instant case.

        C. IN CAMERA REVIEW

    Plaintiff requests an <u>in camera</u> review on grounds that
defendant did not sustain its burden through the submission of
detailed affidavits that identify documents at issue and explain
why they fall under the claimed exemptions. (Doc. No. 28 at 9).
Pursuant to 5 U.S.C. § 552(a)(4)(B), the district court "may
examine the contents of such agency records <u>in camera</u> to determine
whether such records or any part thereof shall be withheld under

---

[21]Local Rule of Civil Procedure 37(a)1 reads:

        In accordance with Fed. R. Civ. P. 26(b), when a claim of
    privilege or work product protection is asserted in response to a
    discovery request for documents, the party asserting the privilege
    or protection shall provide the following information in the form
    of a privilege log:

        (1) The type of document;

        (2) The general subject matter of the document;

        (3) The date of the document;

        (4) The author of the document; and

        (5) Each recipient of the document. . . .

any of the exemptions."

Although "[i]n camera review of documents that have been withheld or redacted is disfavored," Garcia, 181 F. Supp. 2d at 370, such review is "a matter left to the discretion of the district court." Donovan v. Federal Bureau of Investigation, 806 F.2d 55, 59 (2d Cir. 1986). The following factors should be considered by the court in deciding whether an in camera inspection is warranted: "(a) judicial economy, (b) the conclusory nature of the agency affidavits, (c) bad faith on the part of the agency, (d) disputes concerning the contents of the documents, (e) whether the agency requests an in camera inspection, and (f) the strong public interest in disclosure." Id. (citation omitted). Moreover, an in camera review is "[m]ost often" appropriate "when only a small number of documents are to be examined." Donovan, 806 F.2d at 59.

In this case, the interest in judicial economy would not be served as there are fifty-three[22] contested documents; there is no evidence of bad faith on the part of the agency;[23] the agency has not requested an in camera inspection; and, plaintiff has not presented evidence substantiating a strong public interest that would be served in disclosure. That notwithstanding, this Court has

_____

[22]There are no documents 17 and 25.

[23]Although defendant released additional documents to plaintiff some seven or eight months after plaintiff's initial request (see Doc. No. 27 at 2-3), "the voluntary release of previously withheld documents does not by itself demonstrate bad faith." Halpern, 181 F.3d at 295 (citations and internal quotations omitted).

20

concluded, in Section II.A.2 <u>supra</u>, that the agency affidavit is conclusory and does not constitute an itemized and indexed justification for non-disclosure with the specificity contemplated by the <u>Vaughn</u> court, and plaintiff disputes the contents of the documents and requests that reasonably segregable portions of the documents be disclosed. (<u>See</u> Doc. No. 28 at 9).

In this case, where the records are "vague or the agency claims too sweeping," and where it is not "clear from the records that [defendant] has not exempted whole documents merely because they contained some exempt material," it is appropriate for this Court to conduct an <u>in camera</u> examination. <u>Brown v. Federal Bureau of Investigation</u>, 658 F.2d 71, 74 (2d Cir. 1981)(citations omitted). Such conclusion is in accord with the Second Circuit's decision in <u>Halpern</u> wherein the court acknowledged that an <u>in camera</u> review of contested documents is appropriate when the district court is unable to assess the validity of the exemptions claimed upon its review of the indexes and affidavits provided by the government agency. 181 F.3d at 295; <u>see</u> <u>Garcia</u>, 181 F. Supp. 2d at 370. Accordingly, defendant shall produce the fifty-three documents[24] for this Court's <u>in camera</u> review **on or before April 11, 2006**.

---

[24]<u>See</u> note 8 <u>supra</u>.

IV. CONCLUSION

    Accordingly, for the reasons stated above, defendant's Motion for Summary Judgment (Doc. No. 25) is **granted in part and denied in part** to the extent that defendant shall produce the fifty-three withheld documents to this Court for an in camera review.

                            SO ORDERED.

                            _____

                            ELLEN BREE BURNS, SENIOR JUDGE
                            UNITED STATES DISTRICT COURT

    Dated at New Haven, Connecticut this __ day of March, 2006.